IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-02526-PAB

THOMAS DERRYBERRY,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Thomas Derryberry on September 17, 2021. Plaintiff seeks review of the final decision of defendant (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, as well as for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383(c). Docket No. 1 at 2, ¶ 5. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

On November 19, 2018, plaintiff applied for social security benefits under Title II of the Act. R. at 18. On December 8, 2020, plaintiff amended his claim to allege a disability onset date of January 1, 2019. R. at 34, 39. Plaintiff's Title II claim was initially denied on June 4, 2019 and denied on reconsideration on December 17, 2019.

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

R. at 18.  Plaintiff requested a hearing before an administrative law judge ("ALJ").  *Id.*

On December 8, 2020, the ALJ held a hearing.  *Id.*  On February 2, 2021, the ALJ issued a decision denying both of plaintiff's claims.  R. at 27–28.  The ALJ found plaintiff has not engaged in substantial gainful activity since the onset date and had severe impairments of multiple right knee replacements, obesity, status-post bariatric surgery, and asthma, which limit plaintiff's ability to perform basic work activities.  R. at 20.  The ALJ also found that plaintiff has non-severe impairments of chronic rhinitis and sinusitis, obstructive sleep apnea, hypothyroidism, diverticulitis, hypertension, and substance addiction disorders in remission.  R. at 21.  The ALJ determined that, after reviewing the four functional areas of mental functioning in 20 C.F.R. 404, Subpart P, App. 1, plaintiff's "medically determinable mental impairments of anxiety, depression, and posttraumatic stress disorder (PTSD), considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  R. at 21–22; *see* 20 C.F.R. § 404.1520a(b)(2), (c)(3).  The ALJ ruled that plaintiff does not have an impairment or combination of impairments that medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  R. at 22.

Ultimately, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following qualifications:

> he can occasionally climb ladders, ropes, and scaffolds.  He can occasionally kneel, crouch, and crawl.  He can frequently climb stairs and ramps.  He can frequently balance and stoop.  He can have occasional exposure to vibrations, hazards, and pulmonary irritants.

R. at 23.  The ALJ determined that plaintiff was capable of performing past relevant

work as a quality control supervisor, quality control manager, production manager, and production superintendent.  R. at 27.  The ALJ ruled plaintiff was not under a disability from January 1, 2019 until February 2, 2021.  *Id.*

Plaintiff requested review of the ALJ's decision and, on August 25, 2021, the Appeals Council upheld the ALJ's decision.  R. at 6.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting

*Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2007)).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises two objections: (1) the ALJ did not include plaintiff's mental health limitations in the determination of his RFC and (2) the ALJ erred by not including in the RFC analysis his need for a cane to ambulate and his need to elevate his legs while sitting. Docket No. 16 at 16–26. Plaintiff argues that these errors affected the ALJ's analysis at steps four and five. *Id.* at 18, 25. The Court addresses each objection in turn.

### A. Mental Health Impairments

Plaintiff argues the ALJ erred by failing to consider his mental health impairments to determine plaintiff's RFC. *Id.* at 16–17. Plaintiff states that "the ALJ in this case relied on her finding of non-severity for Mr. Derryberry's mental health limitations as a substitute for an adequate RFC analysis and did in fact ignore them in making the RFC for Mr. Derryberry." *Id.* at 21. Plaintiff requests that his case be remanded "for a proper

5

formulation of Mr. Derryberry's RFC that includes all of his mental health limitations." *Id.* at 22.

To evaluate a mental impairment, at step two, an ALJ first determines whether a medically determinable impairment exists. 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment exists, the ALJ evaluates the functional limitation resulting from the impairment in four areas, namely, "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.*, § 404.1520a(c)(3). If the claimant is found to have no limitation or mild limitations, the impairment is generally found to be not severe. *Id.*, § 404.1520a(d)(1). At step four, to determine an RFC, the ALJ considers all medically determinable impairments, including mental impairments that are not severe. *Id.*, § 404.1545(a)(2).

As part of its step two analysis, the ALJ determined that plaintiff had "medically determinable mental impairments of anxiety, depression, and posttraumatic stress disorder (PTSD)." R. at 21. The ALJ determined that, individually and in combination, plaintiff's mental impairments caused him no limitations in the areas of understanding, remembering or applying information, and managing oneself. R. at 21–22. The ALJ determined plaintiff had mild limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace. R. at 22. Overall, the ALJ categorized the limitations caused by plaintiff's mental impairments as not severe. *Id.*

Regarding plaintiff's RFC, the ALJ observed that the limitations identified at step two are not RFC determinations and that a more detailed analysis was required. *Id.* The ALJ considered all of plaintiff's symptoms to make an RFC determination. R. at 23.

6

The ALJ found the opinions from state-agency psychologists Peter Bradley, Ph.D. and Mark Suyeishi, Psy.D. persuasive and relied on their opinions that plaintiff's medical impairments are non-severe.  R. at 26.  The ALJ observed the psychologists' opinions were supported by a "citation to the claimant's stable mental status examinations and evidence that his symptoms were well controlled with medication" and that their opinions were consistent with plaintiff's mental health treatment records documenting improvement with medication and therapy.  *Id.*

Plaintiff does not object to the ALJ's analysis at step two.  Rather, plaintiff argues that the ALJ failed to do the more detailed analysis required at step four and that this failure resulted in an incorrect determination at step four that plaintiff could do his past relevant work.  Docket No. 16 at 18.  Plaintiff takes issue with the ALJ's finding that plaintiff does not have any mental health limitations and disputes the ALJ's statement that "all [of] Mr. Derryberry's impairments are being considered, including both the severe and non-severe impairments."  *Id.* at 17.  Plaintiff argues that evidence was presented at his hearing about his mental impairments showing "it is clear that Mr. Derryberry has mental health limitations from his mental impairments."  *Id*. at 20.  Plaintiff does not explicitly state what limitations he believes were demonstrated, although he states he testified his mental health issues affected his ability to concentrate.  *Id.* at 18.

Plaintiff argues that the Tenth Circuit's decision in *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), analyzing non-severe mental impairments at step four, demonstrates that the ALJ erred in his case.  Docket No. 16 at 21–22.  *Wells* holds that the ALJ must "consider the combined effect of all of the claimant's medically

7

determinable impairments, *whether severe or not severe*." 727 F.3d at 1065 (original emphasis). Additionally, *Wells* noted that "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id.*

In *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (unpublished), the court ruled that, where an ALJ discussed a non-severe physical impairment in detail at step two and recognized the obligation to consider all impairments, including impairments that are not severe, at step four, the ALJ did not improperly rely on a step two analysis as a replacement for an RFC inquiry. *Id. Bradley* stated, "[b]ecause the record shows the ALJ considered Bradley's hand impairments in determining his RFC, the ALJ's failure to specifically discuss them at the fourth step does not require reversal." *Id.*

Here, the ALJ observed that plaintiff has a mild limitation in the area of concentrating, persisting, or maintaining pace at step two and discussed plaintiff's mental impairments at step four. R. at 22, 26. Plaintiff does not identify why he disputes that the ALJ considered his non-severe mental impairments. Docket No. 16 at 17. Instead, plaintiff cites evidence presented at the hearing that he says supports his claim that he has limitations based on his mental health impairments. *Id.* at 18–20 (citing Docket No. 16, § B.III.). Plaintiff's unsupported assertion that the ALJ did not consider the evidence is insufficient to demonstrate error; the Court credits the ALJ's statements that she considered the entire record. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (observing that it is a well-established principle that the court takes ALJs at their word when they state they reviewed all the evidence). Here, like in

*Bradley*, the ALJ provided a detailed discussion of plaintiff's impairments in step two. R. at 21–22. But, unlike *Bradley*, where the judge indicated only a whole record review, the ALJ here discussed plaintiff's mental health impairments in the step four analysis. R. at 26; *Bradley v. Colvin*, 643 F. App'x at 676. The Court concludes that, at step four, the ALJ "consider[ed] the combined effect of all medically determinable impairments, whether severe or not." *Wells*, 727 F.3d at 1069 (emphasis omitted). Plaintiff does not argue that the ALJ lacked substantial evidence in support of her findings on plaintiff's mental health impairments, only that they were not considered. Therefore, plaintiff fails to identify any error in the exclusion of any mental health impairment limitations in his RFC.

### B. RFC Limitations

Next, plaintiff argues that the ALJ erred by not including limitations in plaintiff's RFC that plaintiff requires a cane to ambulate and that plaintiff must elevate his legs while sitting. Docket No. 16 at 22–26. Plaintiff states that the ALJ incorrectly observed that a physician did not prescribe a cane for plaintiff or state a cane was a medical necessity. *Id.* at 22. Further, plaintiff argues that the ALJ should have found plaintiff's statement that he must elevate his leg 30-40% of the time credible and that the ALJ did not have substantial evidence to reject Mr. Derryberry's contention that he must elevate his legs. *Id.* at 25–26.

First, plaintiff disagrees with the ALJ findings regarding the opinions of Dr. Stephen Creer, who conducted a consultative examination of plaintiff on December 9, 2019. R. at 24. Dr. Creer reported plaintiff's occasional use of a doctor-prescribed cane for balance and opined that a cane is occasionally medically necessary for

plaintiff.  *Id.*  The ALJ did not find Dr. Creer's opinion that a cane was occasionally medically necessary persuasive because it was contradicted by findings in Dr. Creer's report and evidence in plaintiff's medical record.  R. at 25–26.  For example, the ALJ cited to medical records that showed the following: in January 2018, after completing physical therapy, plaintiff demonstrated an improved range of motion in the right knee, *id.*; notes from February 2018 showed no signs of complications, *id.*; medical records showed a lack of significant complaints or abnormal findings since the alleged onset date, *id.*; and plaintiff's post-operative treatment notes described plaintiff as "100 percent weight-bearing."  *Id.* at 25.

Additionally, the ALJ found that Dr. Creer's report did not support plaintiff's use of a cane.  *Id*.  Dr. Creer reported that plaintiff had no difficulty ambulating, only mild difficulty changing positions, and that plaintiff's range-of-motion testing of his knees was normal.  *Id.*  The ALJ accepted Dr. Creer's opinion on plaintiff's lifting capacity as persuasive, but rejected Dr. Creer's opinion on plaintiff's ability to walk and stand as unpersuasive.  *Id*. at 25–26.  These determinations of Dr. Creer are not mere conclusions, but are supported by substantial evidence which is not overwhelmed by the other parts of the record that plaintiff asserts discredit the ALJ's findings.

Next, plaintiff states the record shows that plaintiff was using a cane since 2011 and, in support, cites instances in the record where plaintiff used a cane ranging from November 10, 2011 until January 9, 2018.  Docket No. 16 at 22–23.  None of the evidence plaintiff cites indicates that a physician deemed a cane medically necessary.  Plaintiff states that, on October 22, 2014, "Dr. George G. Wells stated in his treatment note that he ordered a cane for Mr. Derryberry."  *Id*. at 23.  While it is true that the note

10

indicates a cane was ordered, along with a longer right knee brace and an "unloader" for the left knee, the note does not indicate the doctor found this cane to be medically necessary.  *See* R. at 569.

Plaintiff states that, on February 1, 2016, "his doctor discussed and suggested that he should use his cane and knee braces."  Docket No. 16 at 23.  The note plaintiff cites states that plaintiff and his care provider "[d]iscussed using cane more frequently."  R. at 454.  While this suggests plaintiff elected to use a cane, it does not indicate it was deemed medically necessary.  Plaintiff's other citations appear to be records of his self-reported use of a cane.  *See* Docket No. 16 at 22–23.  As part of her review of the whole record, the ALJ was entitled to give these statements the weight she did when determining whether a cane was medically necessary.  The parts of the record cited by plaintiff do not discredit the other medical notes and records the ALJ relied on as substantial evidence that plaintiff did not medically require a cane.  Plaintiff provides no other reason why the ALJ erred in finding that Dr. Creer's opinion on plaintiff's use of a cane was unpersuasive.

Plaintiff argues the ALJ erred by not including an RFC limitation that he must elevate his legs.  Docket No. 16 at 26.  Mr. Derryberry argues "[t]he ALJ should have found Mr. Derryberry credible[2] with respect to having to keep his leg elevated at waist level for 30-40% percent of the time."  *Id*. (footnote added).

---

[2] On March 26, 2016, SSR 16-3p superseded SSR 96-7p and eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms.  *Makeen v. Berryhill*, No. 17-cv-02663-CMA, 2018 WL 3633560, at *8 (D. Colo. July 31, 2018). Adjudicators are to apply SSR 16-3p when making determinations and decisions on or after March 28, 2016.  SSR 16-3p, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017).  The ALJ issued her decision on February 2, 2021, R. at 28, so SSR 16-3p governed the ALJ's analysis of

SSR 16-3p requires an ALJ to follow a two-step process to evaluate symptoms, which are a claimant's own description or statement of his physical or mental impairments. 20 C.F.R. § 404.1502(i). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p at *3. Second, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Under SSR 16-3p, an ALJ must "consider all of the evidence in an individual's record," including "all of the individual's symptoms . . . and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record," *id.* at *2, as well as the claimant's "statements about the intensity, persistence, and limiting effects of symptoms" and evaluates whether the claimant's "statements are consistent with objective medical evidence and the other evidence." *Id*. at *4, 6. For instance, the ALJ takes account of the claimant's "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed." *Id.*

Plaintiff argues the ALJ "did not have substantial evidence" to disregard his complaint that he must elevate his legs. Docket No. 16 at 26. The Court finds the ALJ complied with SSR 16-3p. The ALJ acknowledged plaintiff's description of his symptoms, namely, that he is unable to work because of his knee impairment. R. at

---

plaintiff's subjective complaints. *See Makeen*, 2018 WL 3633560, at *8 (stating that ALJ's subjective complaint evaluation was governed by ruling in place at time of decision). To the extent plaintiff argues that the ALJ erred under the previous credibility standard, the Court will decline to evaluate plaintiff's argument.

12

24–26.  The ALJ determined that plaintiff's medical impairments could reasonably be expected to cause his alleged symptoms, but found that Mr. Derryberry's statements on the intensity, persistence, and limitations of his symptoms was not fully consistent with the evidence in the record.  R. at 25–26.  The ALJ thus considered plaintiff's statements and evaluated those statements against "objective medical evidence and the other evidence," as SSR 16-3p(2)(a) requires.  Outside of his own testimony, plaintiff does not cite any evidence that he must elevate his legs.  Without any contradictory evidence, the Court cannot say the ALJ's ruling was without substantial evidence.  Plaintiff has not shown any error in the limitations in his RFC.

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED November 28, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge